394 N.W.2d 167 (1986)
CITIZENS SECURITY MUTUAL INSURANCE COMPANY OF RED WING, Minnesota, Appellant,
v.
GENERAL ELECTRIC CORPORATION, Respondent,
Sim-Kar Lighting Fixture Company, Inc., Respondent,
Michael Anderson, et al., Nominal Defendants,
Holcomb Knutson & Co., Respondent,
Paul and Jacqueline Toft, Respondents.
No. CO-86-707.
Court of Appeals of Minnesota.
October 7, 1986.
Review Denied November 26, 1986.
*168 Lee F. Haskell, Cosgrove & Haskell, Minneapolis, for appellant.
Sally A. Johnson, Diana Young Morrissey, Faegre & Benson, Minneapolis, for General Elec. Corp.
Frederick L. Grunke, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for Sim-Kar Lighting Fixture.
Roger C. Malm, Brink, Sobolik, Severson, Vroom & Malm, Hallock, for Holcomb Knutson Co.
Paul and Jacqueline Toft, pro se.
Heard, considered and decided by FORSBERG, Presiding Judge, FOLEY, Judge, and LANSING, Judge.

OPINION
FOLEY, Judge.
Appellant Citizens Security Mutual Insurance Company of Red Wing, Minnesota commenced this products liability action against respondents General Electric Corporation and Sim-Kar Lighting Fixture Company, Inc. based on its subrogation rights after paying $659,438.89 to its insureds, the nominal defendants here. Determining that the action was barred by the two-year statute of limitations, the trial court granted separate motions by respondents for summary judgment. On appeal, appellant claims that the four-year statute of limitations applies to its action. We disagree and affirm.

FACTS
On December 12, 1982, a fire destroyed an office building in Alexandria, Minnesota. The building was a single story cement block structure originally used as a warehouse. In July 1981 the building was sold for $72,000, and it was soon converted into office condominium space at a cost of $276,000. This conversion involved extensive remodeling, including lowering of the ceiling and installation of recessed fluorescent light fixtures.
It was undisputed that the fire was of electrical origin. In a report dated December 30, 1982, State Fire Marshall Del Johnson stated:
In conclusion from all indications the point of origin was above the ceiling level about 1/3 of the way down the building from the west wall. * * * The exact cause of ignition could not be found in this area. There was electrical circuitry and recessed florescent lights in the area. I feel there had to be a malfunction of this equipment that caused this fire.
Similarly, fire investigator William Fust concluded in a report dated February 7, 1983:
[T]he cause of the fire is an electrical malfunction which is located in the false ceiling area in the center portion of the building * * *. This investigator was able to determine the type of materials used in the electrical construction of the building and it was learned at the time of the fire the wiring was no more than 15 months old and it was determined that a *169 certain type of troffer ballast electrical wiring system was present in the area of origin. A possibility of subrogation due to an electrical malfunction or a manufacturer's defect do exist in this particular case.
In an earlier report dated February 3, 1983, Fust had noted that the light fixtures were manufactured by Sim-Kar and that "the light ballast system was purchased from Dakota Electric Company in Fargo, North Dakota and installed by Rudy's Electric."
Appellant thereafter commenced an action against the electrician, Rudy's Electric, Inc., alleging that the fire had been caused by negligent wiring of the electrical circuits. Settlement was reached on May 6, 1985, and the electrician's liability carrier paid its policy limits of $250,000.
Following that settlement, Ordean S. Anderson, an electrical engineer who had been retained by Rudy's Electric, "intimated" to appellant that the fire was caused not by negligent wiring on the part of the electrician but by a defect in the ballast of the light fixtures. Appellant then commenced this products liability action against respondents in early June 1985.
Robert Svare, an electrical engineer retained by appellant, testified by deposition that each light fixture contained four ballasts, which are small box-like objects "used to generate a surge of high voltage to ignite the gases inside the fluorescent tube when they are first turned on." Svare further agreed that these ballasts were an "integral part of the light fixture" and accessible only by removing part of the ceiling.
Respondents moved separately for summary judgment, arguing that appellant's action arose out of a defective and unsafe condition of an improvement to real property and was barred because it was not brought within two years of discovery of the defect. This appeal followed the trial court's grant of summary judgment to respondents.

ISSUE
Did the trial court properly grant summary judgment to respondents?

DISCUSSION
Summary judgment may be granted if "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." Minn.R. Civ.P. 56.03.
On appeal from a summary judgment it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.
Betlach v. Wayzata Condominium, 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the one against whom summary judgment was granted. Abdallah, Inc. v. Martin, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).
The statute of limitations for an action arising out of a defective and unsafe condition of an improvement to real property is two years:
Subdivision 1. Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, * * * arising out of the defective and unsafe condition of an improvement to real property, * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property * * * more than two years after discovery thereof * * *.
Minn.Stat. § 541.051 (1984).
As subrogee in this action, appellant is entitled to no greater rights than those possessed by its insureds. Great Northern Oil Co. v. St. Paul Fire and Marine Insurance Co., 291 Minn. 97, 99, 189 N.W.2d 404, 406 (1971). This claim thus accrued when the insureds discovered the defective and unsafe condition, and appellant does not dispute that this discovery occurred more than two years before commencement *170 of this action.[1]But cf. Bulau v. Hector Plumbing and Heating Co., 387 N.W.2d 659 (Minn.Ct.App.1986), pet. for rev. granted, (Minn. Aug. 13, 1986) (two-year limitations period for actions involving improvements to real property, applicable to subcontractor's action for contribution against general contractor began to run when subcontractor was sued rather than when fire occurred).
Nor is there much dispute as to whether installation of the light fixtures and ballasts constituted an "improvement" to real property.[2] Utilizing a "common sense" analysis, it is clear that installation of the light fixtures and ballasts, which were a "substantial affixed part" of the electrical system, constituted an improvement to real property. See Kemp v. Allis-Chalmers Corp., 390 N.W.2d 848 (Minn.Ct.App.1986) (switchgear compartment constituted a substantial affixed part of a plant electrical system and was an improvement to real property under Minn.Stat. § 541.051).
The sole issue on appeal is whether respondents are persons furnishing materials of construction under Minn.Stat. § 541.051. In Kemp, a similar action against Allis-Chalmers Corp. and A.G. McKee & Co. was brought based on a claim that they defectively designed, manufactured, sold, and installed a switchgear compartment of a waste gas fan located in an Eveleth Mines pellet plant. This court affirmed a determination by the trial court that the action arose out of a defective and unsafe condition of an improvement to real property and was barred by the two-year statute of limitations. Kemp discussed whether the product constituted an improvement; whether Allis-Chalmers and A.G. McKee were suppliers of materials within the meaning of Minn.Stat. § 541.051 was not at issue. Nevertheless, Kemp implies that Minn.Stat. § 541.051 covers manufacturers, whether involved in construction of the improvement or not.
Examination of the history of Minn.Stat. § 541.051 indicates that it was meant to apply to the manufacturers in this case. Enacted in 1965, Minn.Stat. § 541.051 originally applied only to persons designing or constructing improvements to real property, not to persons supplying materials for such improvements. Because this statutory distinction was found to impose disparate treatment on designers and builders (as opposed to material suppliers) with no rational basis, the statute was declared unconstitutional in Pacific Indemnity Company v. Thompson-Yaeger, Inc., 260 N.W.2d 548, 555 (Minn.1977). In 1980, the legislature amended Minn.Stat. § 541.051 to correct this defect. See 1980 Minn.Laws ch. 518, § 2.
The supreme court considered this amended version of Minn.Stat. § 541.051 in Calder v. City of Crystal, 318 N.W.2d 838 (Minn.1982). It was argued in Calder that the statute remained unconstitutional because it excluded manufacturers of component parts. The supreme court disagreed, and concluded that "a `manufacturer of component parts' falls within the statute's coverage as a supplier of materials used in construction of the improvement." Id. at 843 (footnote omitted). In reaching its conclusion, the court impliedly rejected at least one commentator's view that manufacturers of component parts should be distinguished from materialmen because:
[The manufacturer] is usually engaged in a repetitive process, accomplished at his premises, and thus has a better opportunity to discover and correct defects in his manufacturing process' while the other protected parties' experience with the improvement *171 is only temporary and fragmentary.
Id. at 843 n. 5 (quoting Rogers, The Constitutionality of Alabama's Statute of Limitation for Construction Litigation: The Legislature Tries Again, 11 Cum.-Sam. L.R. 1, 21 (1980).
Although Calder expressly mandates a broad interpretation of Minn.Stat. § 541.051, appellant urges this court to adopt a narrow view of the statute. Appellant attempts to draw a distinction between a manufacturer who actually installs a component part and one who is not directly involved in the construction of the improvement. However, the supreme court has previously ruled that distinctions between those directly involved in the construction (designers and builders) and those not directly involved in the construction (material suppliers) are unconstitutional. See Pacific Indemnity, 260 N.W.2d at 555.
Appellant also attempts to distinguish between a "material of construction" under Minn.Stat. § 541.051 and a "product" under § 541.05, subd. 2, the four-year statute of limitations for products liability claims. It argues that because a light fixture is more a "finished product" than a material of construction, the four-year statute of limitations should apply. Again, appellant's argument ignores the broad interpretation given to Minn.Stat. § 541.051 by the supreme court in Calder when it determined that a manufacturer of component parts must be considered a supplier of materials.
These semantics also ignore the express language of the two statutes. The language of § 541.05, subd. 2 is limiting:

Unless otherwise provided by law, any action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years.
Id. (emphasis added). In contrast, the language of Minn.Stat. § 541.051 broadly indicates that it applies to actions commenced "in contract, tort, or otherwise to recover damages for any injury to property, real or personal." Id. Under the basic rules of statutory construction, the more specific provisions of Minn.Stat. § 541.051 apply. See Ehlert v. Graue, 292 Minn. 393, 195 N.W.2d 823 (1972).
In light of the broad view of Minn.Stat. § 541.051 given by the supreme court in Calder and the express language of the statute, respondents must be considered suppliers of materials which are used in the construction of an improvement to real property. The trial court thus properly determined that appellant's action is barred because it was not brought within two years of discovery of the defective and unsafe condition.

DECISION
The trial court's grant of summary judgment to respondents is affirmed.
Affirmed.
NOTES
[1] Even if appellant were to argue that it did not "discover" the defect on the date of the fire, it was fully aware that the fire was possibly caused by a defect in the lighting fixtures and ballasts based on the February 1983 reports of investigator Fust.
[2] At oral arguments before this court, appellant claimed that there is evidence that the ballasts might have been incorporated after installation of the light fixtures and that installation of the ballasts was therefore an ordinary repair and not part of the improvement. This issue was improperly raised for the first time on appeal, has no support in the record and is otherwise without merit.