Leon L. WITTMER, et al., Respondents,

v.

Norbert J. RUEGEMER, d.b.a. Norco Construction, Chester Kottke, Respondents,

and

The City of Corcoran, Petitioner, Appellant.

No. C6–86–1599.

Supreme Court of Minnesota.

Feb. 19, 1988.

consider his claim that the rule offends the due process clauses of the United States and Minnesota Constitutions.

Eric J. Magnuson, Louise A. Dovre, Minneapolis, for appellant.

Thomas B. Humphrey, Jr., Bloomington, for Leon L. Wittmer.

Carolyn J. Trevis, Minneapolis, for Norbert Ruegemer.

Leland S. Watson, Minneapolis, for Chester Kottke.

## OPINION

COYNE, Justice.

 This appeal raises once again questions concerning the event which triggers the commencement of the two-year limitations period provided by Minn.Stat. § 541.051, subd. 1 (1984). The trial court granted summary judgment for the defendants, ruling that plaintiffs' action to recover damages resulting from the negligent design and installation of a septic system was time-barred because it was instituted more than two years after they discovered some damage—namely, standing water over the seepage area. The court of appeals reversed, holding that the claim was not barred because the plaintiffs neither discovered nor should have discovered the defective condition of the septic system until October 1984, less than two years before they commenced this action. *Wittmer v. Ruegemer*, 402 N.W.2d 187 (Minn.App. 1987). We agree with the court of appeals that the two-year limitation period provided in section 541.051, subd. 1, commences when the injured party discovers, or with reasonable diligence should have discovered, the defective condition of an improvement to real property. Since, however, we are of the opinion that there are genuine issues of material fact concerning when the plaintiffs discovered, or with reasonable diligence should have discovered, the defective condition of the septic system, we reverse that portion of the decision of the court of appeals deciding the question as a matter of law and remand for determination of that issue by the trier of fact.

The recurring difficulties encountered in identifying the events which commence the running of the limitations set by Minn.Stat. § 541.051 (1984) for instituting an action for damages arising out of the defective and unsafe condition of an improvement to real property prompts us once more to review the question. In order to provide a perspective for discussion we deem it necessary to relate the "facts" on which the lower courts relied in reaching differing conclusions. We note, however, that because the matter was presented by defendants' motions for summary judgment, the events preceding the commencement of the action have been gleaned from the pleadings and plaintiff Leon Wittmer's affidavit opposing the motions and are not necessarily undisputed.

Plaintiffs Leon and Mary Wittmer commenced this action in October 1985 to recover damages for the negligent design and construction of their home's septic system, naming as defendants Norbert J. Ruegemer d/b/a Norco Construction Co. (Ruegemer), the general contractor; Chester Kottke, the Corcoran building inspector and the designer and installer of the septic system; and the City of Corcoran. Approximately four years earlier, in July 1981, plaintiffs entered into a contract with Ruegemer for the construction of a house on their property in Corcoran, Minnesota. Plaintiffs had previously engaged Ingleside Engineering and Construction to make per-

colation tests on the property and to design an onsite domestic sewage disposal system, and specifications for the Ingleside system were incorporated into the construction contract. Ruegemer subcontracted the construction of the septic system to Kottke, who then proposed an alternative sewage disposal system. With the plaintiffs' approval, Kottke installed his proposed system and, acting as the Corcoran building inspector, inspected and approved it late in the fall of 1981.

In August 1982, plaintiffs noticed that the lawn at the west end of the seepage bed was constantly wet, but they did not consider the wetness a problem because the ground was firm. By June 1983, however, the wet area was larger, there was some standing water on the lawn, and the ground no longer supported the weight of a lawnmower without its wheels sinking. At plaintiffs' request Kottke inspected the site. Plaintiffs assert that Kottke assured them the problem was not serious and posed no health hazard and that it could be cured by putting dirt fill at the end of the seepage bed.

The plaintiffs decided to add the fill as a part of some planned landscaping. When the landscaping work began in August 1984, the ground above the west end of the system had begun to sink, a large area of grass was dead, and there was standing water 30 feet from the original wet spot. Kottke again advised additional dirt fill.

In October 1984 Michael Gaffron inspected the plaintiffs' sewage disposal system and reported that the problem could not be corrected by adding dirt fill and recommended the installation of a new drain field. A second consultant concluded that the system had never worked properly and that it should be replaced by an entirely new system.

After the Corcoran City Council denied their request for redress, plaintiffs commenced this action in October 1985. The trial court granted summary judgment for the defendants, ruling that the statute be-

gins to run when some damage occurs which would entitle the victim to maintain a cause of action and that plaintiffs' awareness of standing water over the seepage area in June of 1983 was sufficient to commence the limitation period. The court of appeals reversed on the ground that the plaintiffs neither discovered nor reasonably should have discovered the defective condition of the septic system until October 1984, less than two years before the action was commenced. *Wittmer v. Ruegemer,* 402 N.W.2d 187 (Minn.App.1987). Only the City of Corcoran petitioned for review of the decision of the court of appeals.[1]

The parties agree that section 541.051, which limits the time within which an action may be brought for damages arising out of the defective condition of an improvement to real property, is applicable here. *See Pacific Indemnity Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977). The pertinent portion of the statute follows:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution of indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery thereof, nor, in any event shall such a cause of action accrue more than 15 years after substantial completion of the construction. * * *

Minn.Stat. § 541.051, subd. 1 (1984).

■ We note at the outset that the thrust of section 541.051 differs markedly from that of other statutes of limitations. In general, the limitations period begins to

---

1. As only the City of Corcoran has petitioned for further review, the decision herein affects only its rights and not those of the non-petitioning defendants. *Grisim v. TapeMark Charity Pro–Am Golf Tournament,* 415 N.W.2d 874 (Minn. 1987).

run when a cause of action "accrues," that is, when the action can be brought without being subject to dismissal for failure to state a claim. *O'Neill v. Illinois Farmers Ins. Co.*, 381 N.W.2d 439, 440 (Minn.1986). *See also* Minn.Stat. § 541.01 (1986). Under the Uniform Commercial Code a cause of action for breach of a contract of sale accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach, and the action must be commenced within four years after accrual. Minn.Stat. § 336.2–725 (1986). The general rule with respect to actions for negligence is that the cause of action accrues and the statute of limitations starts to run when the negligent act or omission causes injury on which the injured party could maintain an action. *Dalton v. Dow Chemical Co.*, 280 Minn. 147, 154, 158 N.W.2d 580, 585 (1968). The statute makes no exception in favor of those who may be ignorant of the existence of a cause of action. *Id.* See, e.g., Minn.Stat. § 541.05 (1986).

When, however, personal injury or property damages arises out of the defective and unsafe condition of an improvement to real property, Minn.Stat. § 541.051 (1984) provides a two-tier limitation which commences not on the moment of the breach of a contract or the joinder of negligence and injury but upon discovery of the defective and unsafe condition causing injury or damage and upon the date of substantial completion of the improvement.[2] In such a case the action may not be instituted more than two years after discovery of the defective and unsafe condition, but the discovery must be made not more than 15 years after substantial completion of the construction so that in no event may the action be brought more than 17 years after substantial completion of construction. Minn.Stat. § 541.051 (1984).[3]

Moreover, it is discovery of the defective condition, not discovery of damage, which triggers commencement of the two-year limitation period. Relying on the general rules that a cause of action accrues when some damage occurs as the result of negligence and that the statute of limitations runs despite the victim's ignorance of his cause, the trial court ruled that plaintiffs' awareness of the presence of standing water was sufficient to commence the running of the two-year limitation period. The trial court opined, "That plaintiffs may not have realized that they had a claim against defendants at this time is immaterial." We have since expressly held that it is discovery of the defective and unsafe condition which sets the statutory clock in motion. *Bulau v. Hector Plumbing and Heating Co.*, 402 N.W.2d 528, 531 (Minn. 1987); *Ocel v. City of Eagan*, 402 N.W.2d 531, 532 (Minn.1987); *Frederickson v. Alton M. Johnson Co.*, 402 N.W.2d 794, 796–97 (Minn.1987). *See also Continental Grain Co. v. Fegles Const. Co., Inc.*, 480 F.2d 793 (8th Cir.1973).

Depending on the perspective of the aggrieved party, discovery of a defective and unsafe condition may be simultaneous with or follow closely on the heels of an injurious event or there may be delay between awareness of cosmetic or trifling imperfection and discovery of a defective and unsafe condition. For example, let us assume that the wall of a building collapses three years after substantial completion of construction. For the passerby struck by the falling wall, injury, accrual of the passerby's cause of action, and discovery of the defective and unsafe condition of the wall occur simultaneously. For the owner of the building, discovery of the defective condition of the wall comes no later than its collapse. The owner may, however, have discovered the defective and unsafe condition of the wall six months earlier when a consultant advised the owner of the immi-

---

**2.** By its terms Minn.Stat. § 541.051 (1984) limits its application:

Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

Minn.Stat. § 541.051, subd. 1 (1984).

**3.** By Act of March 25, 1986, ch. 455, § 92, 1986 Minn. Laws 885–886, section 541.051 was amended to limit the time for discovery to 10 years after substantial completion and to provide that in no event may the action be brought more than 12 years after substantial completion.

nent danger of collapse. Or it may be that in the exercise of reasonable diligence the owner should have discovered prior to its collapse that the crumbling plaster and the seepage of rainwater or the bowing of the wall signified something more than a minor or cosmetic defect. While it is true that the major physical damage to the building occurred when the wall collapsed, it is apparent that the owner could have maintained an action against a negligent designer, material supplier, or builder for damages by reason of the diminution in the market value of the building by reason of its defective and unsafe condition. In short, the owner's cause of action accrued no later than the substantial completion of construction when the 15 year (now 10 year) limitation period began to run, while the second tier limitation, the two-year period, began to run when the owner discovered or should have discovered the defective condition.

The two limitation periods provided by section 541.051 pose quite different problems with respect to ascertaining the time at which each begins to run. The commencement of the 15 year (now 10 year) limitation is straightforward: Except where fraud is involved it begins to run at substantial completion of construction and the

> [d]ate of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

Minn.Stat. § 541.051, subd. 1 (1984). As is apparent from the foregoing hypothetical, fixing the date on which the two year limitation commences is rather more problematical. When a third party is injured in a sudden, unexpected mishap arising out of the defective and unsafe condition, a serious dispute over the time of discovery is unlikely, and the commencement of the two-year limitation can ordinarily be decided as a matter of law. Similarly, when sudden, calamitous damage arises out of a hidden defect, the date of the owner's discovery may be a matter for summary disposition. But if reasonable minds may differ about the time of discovery or when the defective and unsafe condition should have been discovered in the exercise of reasonable diligence, the question is one for the trier of fact.

■ Unlike the sudden collapse of the hypothetical wall, there has not been any sudden, calamitous failure of the septic system which is the subject of the present case. The plaintiffs allege a gradual accumulation of water at the west end of the seepage bed accompanied by the death of the grass and deterioration of the soil beneath the standing water, and they contend that they did not "discover" the defective and unsafe condition of the septic system until consultants advised them that a new drain field or a new septic system should be constructed. The dates on which the plaintiffs received the consultants' recommendations are no doubt ascertainable, and defendants would probably concede that those recommendations were made less than two years before commencement of the action. Defendants contend, however, that plaintiffs discovered or that in the exercise of reasonable diligence they should have discovered the defective and unsafe condition of the septic system in the summer of 1983, more than two years prior to the commencement of this action. While the court of appeals held that, as a matter of law, the plaintiffs acted as reasonably prudent persons but did not discover the defective condition of the system until one year before they instituted the action, it seems to us this is a question about which reasonable minds might differ.

■ The plaintiffs contend that in any event the statute should be tolled by reason of Kottke's misrepresentation concerning the required corrective action. Minn.Stat. § 541.051 (1984) makes express exception for fraud. Certainly, if the defendant has by fraud prevented the plaintiff from discovering the defective and unsafe condition within 15 years after substantial completion of construction, the statute is tolled until the plaintiff could, by reasonable diligence, have discovered the defective condition. *E.g., Couillard v. Charles T. Miller Hospital, Inc.*, 253 Minn. 418, 92 N.W.2d

96 (1958). *See also Wild v. Rarig*, 302 Minn. 419, 450, 234 N.W.2d 775, 795, *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).[4] With respect, however, to the two-year limitation period, it is apparent that fraud does not toll the statute because the limitation period does not, according to its terms, begin to run until discovery of the defective condition. Of course, fraudulent concealment is relevant if it is contended that the plaintiff should, by exercising reasonable diligence, have sooner discovered the defective condition. Thus, the truth or falsity of Kottke's representations, whether plaintiffs were misled, and other elements of fraudulent concealment are part of the factual background germane to determination by the trier of fact of the date on which the plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered the defective and unsafe condition of the septic system which Kottke designed and built. Since only four years elapsed between installation of the septic system and commencement of this action, there is no occasion to consider tolling the bar of the 15–year limitation period.

Affirmed in part, reversed in part and remanded for further proceedings in conformity with this opinion.

**4.** In such circumstances the party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence. *Wild v. Rarig,* 302 Minn. 419, 450, 234 N.W.2d 775, 795, *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).