Archie **FARNHAM, et al., Appellants,**

v.

**NASBY AGRI-SYSTEMS, INC., Respondent.**

No. C4–88–2285.

Court of Appeals of Minnesota.

April 4, 1989.
Review Denied May 12, 1989.

Steven R. Sunde, Sunde, Olson, Kircher and Zender, St. James, for appellants.

John M. Sheran, Farrish, Johnson and Maschka, Mankato, for respondent.

Heard, considered and decided by PARKER, P.J., and SCHUMACHER and SCHULTZ,* JJ.

## OPINION

**SCHUMACHER, Judge.**

Appellants Archie and Marsha Farnham seek review of a summary judgment dismissing their claims founded on defective installation and design of a grate covering a grain auger, as barred by Minn.Stat. § 541.051. Appellants assert that the grate, which was comprised of removable metal pipes was not an improvement to real property within the meaning of Minn.Stat. § 541.051.

## FACTS

On May 12, 1985, appellant Archie Farnham was seriously injured when he fell or stepped into a grain auger which was owned and operated by his employer, L & L Enterprises. L & L Enterprises is a hog producing operation located in rural Martin County.

Respondent Nasby–Agri System, Inc. (Nasby) was in the business of the sale and installation of grain handling equipment. In September of 1977, Nasby sold to L & L Enterprises a U-trough grain auger that was manufactured by Sudenga Industries. Nasby installed the auger below ground level in a driveway which passes through the L & L Enterprises' grain mill. The auger was protected at the driveway surface by a grate fabricated by Nasby and which consisted of several pre-cut lengths of pipe placed horizontally above the opening of the auger. The pipes were not connected to the floor in any way and were removable. A truck unloading grain into the auger system would simply drive over the grate, empty the grain and leave. The pipes were only removed in order to gain access to the auger, or, on occasion, to allow some types of grain to flow more easily into the auger.

At the time of the accident, the metal pipes had been removed from the opening above the auger. It is unknown who removed the pipes or why. On the day in question, while assisting in the unloading of grain from a truck, respondent Archie Farnham became entangled in the auger. As a result, his left leg was amputated below the knee.

Appellant brought an action claiming that the removable pipes were defective in their design, installation and actual use. The trial court granted respondent's motion for summary judgment finding that the metal pipes of the grate constituted an improvement to real property. The trial court concluded that appellant's action was barred by Minn.Stat. § 541.051, which pro-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

vides for a two-year limitation on any action for injuries arising out of a defective or unsafe condition of an improvement to real property. Appellants claim on appeal that the protective pipes were not a component part of the floor auger system and therefore were not an improvement to real property.

## ISSUE

Were the removable pipes covering the grain auger an improvement to real property within the meaning of Minn.Stat. § 541.051?

## ANALYSIS

The facts of this case are not in dispute. The only question for this court to consider is whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Minn.Stat. § 541.051, provides in part as follows:

Subdivision 1. (a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property * * * more than two years after discovery * * *.

The Minnesota Supreme Court has interpreted the meaning of "improvement to real property":

[F]aced with the task of deciding the meaning of "improvement" to realty as used in Minn.Stat. § 514.01 (relating to mechanics liens) in *Kloster–Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 226 N.W.2d 603 (1975), we adopted a common-sense interpretation as given in Webster's Third New International Dictionary (1971) p. 1138 and found that by definition an improvement is "a permanent addition to or betterment of real property

that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."

*Pacific Indemnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn. 1977). (citations omitted).

"Improvement to real property" has been found to include a rock crushing machine, *Moen v. Rexnord Inc.*, 659 F.Supp. 988, 989 (D.Minn.1987) *aff'd* 845 F.2d 1027 (8th Cir. 1988); an overhead rail crane, *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 452 (Minn.1988); an electrical transformer vault, *Lovgren v. Peoples Electric Co. Inc.*, 368 N.W.2d 16, 18 (Minn.Ct.App.1985) *rev'd on other grounds*, 380 N.W.2d 791 (Minn. 1986); furnaces, *Pacific Indemnity Co.*, 260 N.W.2d at 554; a switch gear compartment which is part of a large electrical transmission system, *Kemp v. Allis–Chalmers Corp.*, 390 N.W.2d 848, 850 (Minn.Ct. App.1986); an electrical ballast which became a part of a light fixture which was installed in a building, *Citizens Security Mutual Insurance Co. of Red Wing v. General Electric Corp.*, 394 N.W.2d 167, 170 (Minn.Ct.App.1986).

We adhere to the common sense definition of "improvement" used in *Kloster–Madsen, Inc.* and *Pacific Indemnity Co.* The grain handling system, including the auger and the metal pipes, was intended to be a permanent installation. The pipes were removable only for the express purpose of permitting access to the auger itself, or to facilitate the flow of some types of grain. Both the auger and the pipes were installed at the same time. The fact that the pipes were removable does not change their character of being a permanent part of the auger system.

In support of their claim that the grate is not an improvement to real property appellant cites the case of *Massie v. City of Duluth*, 425 N.W.2d 858 (Minn.Ct.App. 1988) where this court held that an outdoor recreational water slide adjacent to a swimming pool was not an improvement to real property within the meaning of Minn.Stat.

§ 541.051. In that case, the water slide was used only during the summer season and placed in storage for the off-season. A water slide is merely incidental to a swimming pool and is not crucial to the functioning of the pool. However, in the present case, the grate was a critical part of the auger system, permitting the inflow of grain while protecting workers. The pipes of the grate were removed for express purposes. Other than for those purposes the pipes remained in place and were part of the system at all times.

## DECISION

We find that the grate was a permanent part of the auger system and therefore part of the real property within the purview of Minn.Stat. § 541.051. In view of our decision on the two-year statute of limitations we decline to decide the assumption of risk issue raised by respondent.

Affirmed.