**Michael THORP, Appellant,**

v.

**PRICE BROTHERS COMPANY, et al., Midway Machine Company, Respondents.**

**No. C5–88–2604.**

Court of Appeals of Minnesota.

June 20, 1989.

Review Denied Aug. 15, 1989.

818

Eric J. Magnuson, Louise A. Dovre, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Dale M. Wagner, Louis J. Speltz, Moss & Barnett, P.A., Minneapolis, for Price Bros. Co. et al.

Robert T. Stich, Stich, Angell, Kreidler & Muth, Minneapolis, and Hubert H. Humphrey, III, Atty. Gen., St. Paul, for Midway Mach. Co.

Heard, considered and decided by NORTON, P.J., and FORSBERG and MULALLY,* JJ.

## OPINION

FORSBERG, Judge.

Michael Thorp appeals from a grant of summary judgment to respondents Price Brothers Company (Price Brothers), Flexicore Company (Flexicore), and Midway Machine Company (Midway). We affirm.

## FACTS

On October 6, 1984, Thorp was employed by Molin Concrete Products Company (Molin Concrete) and was injured while working on a concrete molding machine and conveyor system. The injury occurred

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

when Thorp stepped onto a conveyor system while it was in operation and a "push rod" pinned his leg. The push rod is welded onto the frame of the conveyor system, which is in turn welded and bolted to steel channel iron embedded in the concrete floor of the plant. The equipment was designed by Price Brothers and Flexicore, and installed by Midway.

Thorp was hospitalized for a month following the accident and has not returned to work for Molin Concrete. He claims he was denied access to the plant until May 29, 1986, when his attorney and an engineering expert were allowed to inspect the plant equipment. It was at that time, he claims, that he "discovered the defective and unsafe condition which caused the injury."

On June 5, 1987 (over a year after he was allowed to inspect the plant), Thorp brought this action against Price Brothers and Flexicore alleging negligence, strict liability, and breach of warranty. Price Brothers and Flexicore answered, generally denying all claims and specifically alleging that the claims were barred by the applicable statute of limitations; they subsequently amended their answer to include as a defense Minn.Stat. § 541.051, the two-year statute of limitations for actions arising out of improvements to real property. Thorp then amended his complaint to include claims against Midway, as installer of the equipment.

Respondents moved for summary judgment based on § 541.051. In granting summary judgment, the trial court concluded that the plant equipment was an "improvement to real property" within the meaning of § 541.051, that application of the 1988 amendments to § 541.051 bars this action because it was not brought within two years of discovery of the injury, and that application of the 1988 amendments is not unconstitutional. This appeal followed entry of judgment.

## ISSUES

1. Did the trial court err in determining that the plant equipment is an improve-

ment to real property within the meaning of § 541.051?

2. Did the trial court err in concluding that either under the 1988 amendments to § 541.051 or under prior law, the statute of limitations started running at the time of the injury rather than at the time Thorp was allowed to inspect the equipment?

## ANALYSIS

### I.

■ Price Brothers and Flexicore initially insist that Thorp has no right to argue on appeal that the equipment does not constitute an improvement to real property because he did not raise this as an issue before the trial court. Although Thorp failed to present any arguments before the trial court on this issue, it was discussed and ruled on; as such, it is the proper subject of appeal.

■ Minn.Stat. § 541.051 (1984) provides a two-year statute of limitations for actions involving an "improvement to real property." Minnesota courts have adopted the following definition of the term "improvement to real property":

[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Pacific Indemnity Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977) (quoting *Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975)).

Since *Pacific Indemnity,* § 541.051 has been applied to buildings and other permanent structures and to electrical, heating, and lighting systems that are integral parts of a permanent building. *See, e.g., Farnham v. Nasby Agri–Systems, Inc.,* 437 N.W.2d 759, 761 (Minn.Ct.App.1989) (removable pipes covering a grain auger installed below ground level), *pet. for rev. denied* (Minn. May 12, 1989); *O'Connor v. M.A. Mortenson Co.,* 424 N.W.2d 92, 94 (Minn.Ct.App.1988) (unfinished steel stair-

way), *pet. for rev. denied* (Minn. July 28, 1988); *Citizen's Security Mutual Insurance Co. v. General Electric Corp.*, 394 N.W.2d 167, 170 (Minn.Ct.App.1986) (light fixtures and components thereof), *pet. for rev. denied* (Minn. Nov. 26, 1986); *Kemp v. Allis–Chalmers Corp.*, 390 N.W.2d 848, 850–51 (Minn.Ct.App.1986) (switch gear compartment and electrical cables); *Moen v. Rexnord, Inc.*, 659 F.Supp. 988, 989 (D.Minn.1987) (industrial rock crusher), *aff'd*, 845 F.2d 1027 (8th Cir.1988).

In *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448 (Minn.1988), which involved a crane located in a mining facility, the plaintiffs had presented evidence that the crane could be dismantled without destroying or tearing down the building in which it was situated and that similar cranes had been relocated. The supreme court nevertheless held that the crane constituted an improvement to real property because:

> (1) The crane was a permanent addition to or betterment of real property. Since the crane was fabricated on the property in 1965 it has not been moved and there is no indication by either party that the owners intend to relocate it. (2) The permanent nature of the crane is also evidenced by the intricate series of catwalks, walkways and rails that have been constructed around it in order to allow access to and operation of the machinery. (3) The crane enhances the capital value of the property by allowing the excavation of minerals from the land. Without the crane the mining operation would not be as successful and the profitability of the land would decrease. (4) Transporting the crane to Minnesota, installing it on the property, and constructing the series of catwalks and walkways that surround it involved the expenditure of both labor and money. (5) The presence of the crane on the land makes the property more useful or valuable, as distinguished from ordinary repairs and is designed to enable the mining operation to function more effectively. As such, it provides long-term benefits by increasing the productivity of the mining operation.

*Id.* at 452.

Arguing that the equipment here does not enhance the value of the real property

(and essentially focusing on factor 3 above), Thorp characterizes the equipment as an integral part of Molin Concrete's business pursuits, not as an integral part of the building. However, enhancement of property value is only one factor to consider, and examination of the other factors in *Sartori* compels a conclusion that the equipment in this case is an improvement to real property. In particular, an uncontested affidavit submitted by Price Brothers and Flexicore describes the equipment as a "betterment of [Molin Concrete's] plant," as involving "the expenditure of labor and money" and obviously "designed to make [the] plant more useful in the production of concrete slabs and wall structures," and as a "permanent addition to [the] plant."

■ Citing from the legislative record, Thorp further insists that § 541.051 was not intended to be applied to plant equipment with a finite useful life. Cases interpreting the statute, however, have not identified this as a factor to consider when determining whether a machine or system constitutes an improvement to real property. Thorp also argues that respondents were not involved in the construction process and are therefore not within the class of persons the statute was designed to protect. However, § 541.051 broadly applies to "any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of" an improvement; as such, the statute includes Price Brothers and Flexicore as designers of the equipment and Midway as installer.

## II.

■ Thorp argues that the 1988 amendments to § 541.051 do not apply in this case, and that the two-year statute of limitations began running when he inspected the equipment in May 1986 and claims he discovered its defective and unsafe condition. The 1988 amendments to § 541.051 expressly state that the two-year statute of limitations is triggered by discovery of the

injury, not discovery of the defective and unsafe condition of the improvement. *See* 1988 Minn. Laws ch. 607, § 1. These amendments became effective on April 25, 1988, and apply "to matters pending on * * * the effective date." 1988 Minn. Laws ch. 607, § 3.

Thorp concedes that application of the 1988 amendments would bar his claim, which was not brought within two years of October 4, 1984, the date he was injured. *See Ford v. Emerson Electric Co.*, 430 N.W.2d 198, 201 (Minn.Ct.App.1988) (applying 1988 amendments and rejecting argument that a cause of action accrues at the time defect is discovered), *pet. for rev. denied* (Minn. Dec. 16, 1988). He nevertheless argues that application of the 1988 amendments to this case violates due process by failing to give him reasonable notice of a change in the law. He insists that under prior law, his claim would have been timely because the limitations period was triggered by discovery of the defective and unsafe condition, not by discovery of the injury. As will be discussed, Thorp's assertion that he did not receive reasonable notice must be rejected because even under prior law his action is barred.

In *Wittmer v. Ruegemer*, 419 N.W.2d 493, 496 (Minn.1988), which involved application of the 1984 version of § 541.051, the plaintiffs' yard had been gradually damaged by dampness, seepage, and ultimately standing water and destruction of vegetation from a defective septic system. Stressing that "it is discovery of the defective condition, not discovery of damage, which triggers commencement of the two-year limitation period," the supreme court acknowledged that determination of the date on which the two years begins to run is often difficult:

> Depending on the perspective of the aggrieved party, discovery of a defective and unsafe condition may be simultaneous with or follow closely on the heels of an injurious event or there may be delay between awareness of cosmetic or trifling imperfection and discovery of a defective and unsafe condition. For example, let us assume that the wall of a building collapses three years after substantial completion of construction. For the passerby struck by the falling wall, injury, accrual of the passerby's cause of action, and discovery of the defective condition of the wall occur simultaneously. For the owner of the building, discovery of the defective condition of the wall comes no later than its collapse.

*Id.* The court further reasoned:

> As is apparent from the foregoing hypothetical, fixing the date on which the two year limitation commences is rather * * * problematical. When a third party is injured in a sudden, unexpected mishap arising out of the defective and unsafe condition, a serious dispute over the time of discovery is unlikely, and the commencement of the two-year limitation can ordinarily be decided as a matter of law. Similarly, when sudden, calamitous damage arises out of a hidden defect, the date of the owner's discovery may be a matter for summary disposition. But if reasonable minds may differ about the time of discovery or when the defective and unsafe condition should have been discovered in the exercise of reasonable diligence, the question is one for the trier of fact.

*Id.* at 497. Because there had not been any "sudden, calamitous failure of the septic system" and because there was some dispute as to when the plaintiffs had discovered the defective and unsafe condition of the septic system, the court in *Wittmer* concluded that there was a question of fact as to when the two-year limitations period began to run. *Id.*

Contrary to the gradual damage alleged in *Wittmer*, the facts of this case are akin to the sudden collapse of the hypothetical wall: it is undisputed that Thorp was injured in a sudden, unexpected mishap. Given these facts, Thorp either discovered or with reasonable diligence should have discovered the defective and unsafe condition of the equipment on the date he was injured. The fact that he was unaware of the exact nature of the defective and unsafe condition until he was allowed to inspect the equipment does not preclude a grant of summary judgment in this case.

Because we conclude that Thorp's action is barred either under the 1988 amendments to § 541.051 or under prior law, we need not discuss whether the 1988 amendments represent a clarification (rather than a change) of existing law.

## DECISION

The trial court's grant of summary judgment to respondents is affirmed.

AFFIRMED.

NORTON, Judge, dissenting:

I respectfully dissent. In *Wittmer v. Ruegemer*, 419 N.W.2d 493, 496–97 (Minn. 1988), the supreme court held that Minn. Stat. § 541.051 (1984) began to run upon discovery of the defective condition, *not* upon discovery of the damage (or in this case, the injury), and that the date upon which the statute begins to run is often a question of fact which cannot be determined as a matter of law. The *Wittmer* court expressly concluded that "if reasonable minds may differ about the time of discovery or when the defective and unsafe condition should have been discovered in the exercise of reasonable diligence, the question is one for the trier of fact." *Id.* at 497. Given appellant's claim that he did not know of the existence of a defective or unsafe condition until May 29, 1986 (the day he was finally given access to the plant), I believe that a fact question has been raised on the issue of reasonable diligence and as to when appellant should have discovered the defective condition of the improvement.

I further agree with appellant that the 1988 amendments to the statute cannot be applied to this case because they represent an unconstitutional change in existing law. While the legislature is free to change statutes of limitation, it must allow litigants a reasonable opportunity to comply with such a change. *Wichelman v. Messner*, 250 Minn. 88, 108, 83 N.W.2d 800, 817 (1957); *Kozisek v. Brigham*, 169 Minn. 57, 60, 210 N.W. 622, 623 (1926). The 1988 legislature failed to give litigants such an opportunity when it made the amendments effective immediately to pending cases. *See* 1988 Minn. Laws ch. 607, § 3.

Finally, adoption of an amendment generally raises a presumption that the legislature intended to change preexisting law. *Honeymead Products Co. v. Aetna Casualty & Surety Co.*, 270 Minn. 147, 150, 132 N.W.2d 741, 743 (1965) (quoting *Western Union Telegraph Co. v. Spaeth*, 232 Minn. 128, 132, 44 N.W.2d 440, 442 (1950)). In this case, it has been argued that that presumption was rebutted when the 1988 legislature enacted the amendments at issue with the following title:

> AN ACT relating to civil actions; *clarifying* the statute of limitations for damages based on services or construction to improve real property; * * * amending Minnesota Statutes 1986, section 541.051, subdivision 1[.]

Minn. Laws 1988, ch. 607 (emphasis added).

Admittedly, the title of an act is generally indicative of legislative intent. *State v. Northwestern States Portland Cement Co.*, 258 Minn. 162, 166–67, 103 N.W.2d 225, 227–28 (1960). In this case, however, I believe that any attempt by the legislature to label its amendments a clarification should be rejected.

As interpreted by *Wittmer*, the pre–1988 version of the statute could in certain circumstances be read to raise a fact issue as to when the two-year limitation period began to run. Following enactment of the 1988 amendments, however, there is no room for argument on the issue, particularly in a case such as this where the date of injury is undisputed. That represents a clear change in the statute, not a mere clarification.

Moreover, the opinion of a subsequent legislature upon the meaning of a statute is entitled to no more weight than that of a person on the streets, particularly after the supreme court has issued an intervening interpretation of the statute in question. *See Gudvangen v. Austin Mutual Insurance Co.*, 284 N.W.2d 813, 818–19 (Minn. 1979) (Otis, J., dissenting). For these reasons, I believe that the 1988 amendments change the statute, and do not merely clarify it.

I would therefore reverse the grant of summary judgment to respondents and, as in *Wittmer*, remand for further proceedings to determine the date on which the two-year limitation period began to run.