James **GRIEBEL**, et al., Appellants,

v.

**ANDERSEN CORPORATION,**
et al., Respondents:

No. C6–90–2322.

Supreme Court of Minnesota.

Sept. 18, 1992.

James W. Reuter, Jon G. Trangsrud, Lindquist & Vennum, Minneapolis, for appellants.

William P. Studer, John M. Stoxen, Paula D. Osborn, Oppenheimer, Wolff & Donnelly, St. Paul, for respondents.

COYNE, Justice.

Defendants-petitioners Andersen Corporation and the Radford Company obtained review of an unpublished decision of the court of appeals reversing the judgment of dismissal of the plaintiff James Griebel, et al.'s complaint. We entertain review for the sole purpose of clarifying the scope and applicability of the 2–year statute of limitations for claims of damages or injury resulting from "defective and unsafe" improvements to real property, Minn.Stat. § 541.051 (1988), and reverse and remand to the court of appeals for further proceedings.

Plaintiffs James and Paula Griebel purchased a 5–acre parcel of Lake Superior shoreline near Lutsen, Minnesota and thereafter in January 1986 entered into a contract with Isak Hansen & Sons, Inc. for the construction of a lake home on the remains of foundational concrete left after a fire destroyed an original structure. Defendant Andersen Corporation designs, manufactures and sells windows and patio doors, and defendant Radford Company is an Andersen distributor. Hansen is an authorized retailer of Radford. At plaintiffs' insistence, the construction specifications required the use of Andersen doors and windows and all were accordingly installed by the time the home was substantially completed in the summer of 1986. Upon

taking occupancy of the residence at that time, plaintiffs first discovered what later became a continual accumulation of "hundreds of unsightly dead flies." They reported the problem of the entry of the flies through the patio door to the general contractor, which in turn reported to Radford. While Hansen agreed to attempt to correct the problem by replacing the weather stripping, the work was not performed until April 1988. That fall, plaintiffs again experienced the collection of cluster flies near the doors and throughout the basement. When the parties were unable to agree on the proper corrective method, plaintiffs commenced this action in November 1989, seeking to recover damages on the basis that defendants negligently designed and manufactured the patio doors to allow entry of cluster flies, that they negligently failed to warn that the flies could enter the home through the doors and that they breached express and implied warranties.

On defendants' motion to dismiss plaintiffs' complaint on the basis that the action was time barred by operation of Minn.Stat. § 541.051 (1988), the trial court awarded summary judgment to defendants. Recognizing that there existed disputes as to whether the doors indeed caused the problem and as to the nature and extent of plaintiffs' claimed damages, the trial court held that the patio doors constituted improvements to real property and that the injury is claimed to have resulted in the diminution or reduction in value of the home as a result of the claimed defective door. It concluded that plaintiffs' failure to commence this action within two years of their admitted discovery of the defective condition in the fall of 1986 was dispositive. See Wittmer v. Ruegemer, 419 N.W.2d 493 (Minn.1988).

In reversing, the court of appeals relied upon its own earlier decision in Sherbrook Co. v. E & H Earth Movers, Inc., 419 N.W.2d 818 (Minn.App.1988), pet. for rev. denied (Minn., filed April 20, 1988) to conclude that Minn.Stat. § 541.051 (1988) is inapplicable because the plaintiffs did not allege that the defective doors caused any "injury to property, real or personal, or for bodily injury or wrongful death arising out of a defective and unsafe condition." It focused first on the apparent agreement of the parties that the entry of the flies constituted no health hazard and then on what it characterized as the plaintiffs' limited claim in their complaint for money damages for replacement costs relative to the alleged defective patio doors.

Minn.Stat. § 541.051, subd. 1(a) (1988) [1] provides in pertinent part as follows:

Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property * * * more than two years after discovery of the injury. * * *

We first observe that despite the arguments of the plaintiffs to the contrary, this action centers upon an improvement to real property, namely the construction of a home and its integral parts including the patio doors. See, e.g., Pacific Indemnity Co. v. Thompson–Yaeger, Inc., 260 N.W.2d 548 (Minn.1977). Moreover, a reading of the plaintiffs' complaint demonstrates that they seek damages, not only for the replacement costs of the patio doors as suggested by the court of appeals, but also for the loss and diminution of the market value of the home, to fall within the scope of the "injury to property, real or personal" provision of section 541.051, subd. 1(a). See Wittmer v. Ruegemer, 419 N.W.2d 493, 497 (Minn.1988). What then remains is whether the alleged injury to the property arises out of a "defective and unsafe" condition of the improvement.

---

1. Minn.Stat. § 541.051, subd. 1(a) was amended in a manner not pertinent to this inquiry in Minn.Laws 1988 chap. 607, § 1.

We have not had the occasion to specifically construe the phrase "defective and unsafe condition" as it appears in Minn. Stat. § 541.051 (1988), but we have used the phrase as a collective, with its individual terms often interchanged depending upon the facts or circumstances in which the statute has been invoked. *See, e.g., Wittmer v. Ruegemer*, 419 N.W.2d 493 (Minn.1988); *Frederickson v. Alton M. Johnson Co.*, 402 N.W.2d 794 (Minn.1987); *Bulau v. Hector Plumbing and Heating Co.*, 402 N.W.2d 528 (Minn.1987); *Capitol Supply Co. v. City of St. Paul*, 316 N.W.2d 554 (Minn.1982).

In our view, the question of whether injury to property or bodily injury or wrongful death arises out of a "defective or unsafe condition" is one which turns on the individual facts alleged in the complaint. Relying upon its own earlier decision in *Sherbrook Co. v. E & H Earth Movers, Inc.*, 419 N.W.2d 818 (Minn.App. 1988), the court of appeals appears to have narrowed the inquiry, at least with regard to the term "unsafe", to a consideration of whether a health hazard exists, an impermissibly restrictive inquiry. It then concluded that, since the parties here agreed that no health hazard was presented by the accumulation of large numbers of cluster flies, the condition here could not be considered both "defective" and "unsafe."

This rationale is unsatisfactory in two respects. First, although the term "unsafe" is used to refer to something that poses a risk of bodily injury, its meaning is not limited to articles hazardous to physical well-being; "unsafe" also means "insecure." Certainly, that second definition is appropriate in reference to the windows and doors manufactured and installed by the defendants. One of the primary purposes of windows and doors is security against unwanted intruders of any kind. A window or door which fails to provide the expected barrier against unwanted elements such as rain or snow or living creatures such as flies or mosquitoes is insecure or unsafe whether or not the invader is hazardous to life and limb. The entry of hundreds of flies strikes us as a virtual invasion, clearly demonstrating windows

that are insecure and, hence, unsafe as well as defective.

Second, it seems to us highly unlikely that the legislature would limit the time for bringing an action to two years if the offending improvement is not only defective but in addition presents a risk of bodily injury but expand the time for instituting an action to six years if the improvement is merely defective and poses no risk of bodily harm. Because the consequence of the restrictive definition of "unsafe" adopted by the court of appeals is to credit the legislature with the intent to achieve an absurd result—to provide a longer limitation period with respect to a claim arising out of a defect which poses no risk of bodily harm than for a claim arising out of a defect which has caused bodily harm, *see* Minn.Stat. § 645.17(1) (1988), we recognize alternative definitions of "unsafe" such as "insecure" and thus implement the legislature's sensible intention to provide one limitation period for claims arising out of defective and unsafe improvements to property regardless whether the defect is hazardous to human health or whether the defect simply renders the property insecure and vulnerable to invasion.

We therefore reverse, reinstating the judgment of dismissal of plaintiffs' claims as barred by application of Minn.Stat. § 541.051 (1988). The court of appeals did not address plaintiffs' warranty and estoppel claims because it had determined that the statute of limitations was here inapplicable. Accordingly, we remand to the court of appeals for its further proceedings.

Reversed and remanded.

TOMLJANOVICH, Justice (dissenting).

I respectfully dissent. The majority ignores the clear command of the statute that in order for the two-year limitations period to apply, the injury must arise out of condition which is *both* defective and unsafe. By defining "unsafe" as "insecure" instead of "hazardous," I believe the majority has stretched the definition of "unsafe" so it will include most merely defective

improvements. I do not believe we should whittle away at the meaning of "unsafe" in this fashion to avoid the fact that the legislature chose the word "and," not "or."

While we never have defined "defective and unsafe," we have indicated that "and" is an important word and that "defective" and "unsafe" mean different things. For example, in *Kittson County v. Wells, Denbrook & Assoc., Inc.*, 308 Minn. 237, 241 N.W.2d 799 (1976), we said:

> While the statute does not use the term "tort," it contains several references which strongly suggest the legislature intended it to apply only to tort actions. First, the statute refers several times to an "injury" to person or property. Second, the statute requires that such an injury arise out of the "defective *and unsafe*" condition of an improvement to real property.

*Id.* 241 N.W.2d at 801–02 (emphasis in original). Although *Kittson* involved different issues than this case, we recognized a meaningful distinction between "defective" and "unsafe."

Other courts looking at identical or similar statutory language have noted important distinctions between "defective" improvements and "defective and unsafe" improvements. *See E.A. Williams, Inc. v. Russo Dev.*, 82 N.J. 160, 411 A.2d 697, 702–03 (1980), *Newark Beth Israel v. Gruzen*, 124 N.J. 357, 590 A.2d 1171, 1174–75 (1991), and *Kocisko v. Charles Shutrump & Sons Co.*, 21 Ohio St.3d 98, 488 N.E.2d 171, 173 (1986). The *E.A. Williams* case is on point with the present case. There, a building owner sued a surveyor when it turned out that a new building had been incorrectly placed on the owner's property. The New Jersey court held that while the surveying error made the improvement to property defective, it did not make it "unsafe," so the two-year limitations period did not apply. In contrast, in *Newark Beth Israel,* the New Jersey court held the statute did apply when an architect erroneously designed the base unit of a hospital so that, contrary to the parties' intention, an addition could not be built safely on top of it. The court reasoned that while the base unit was not inherently unsafe, it would be unsafe to put on the addition contemplated by both parties. *Id.* 590 A.2d at 1175. The court defined an "unsafe" improvement as one "defectively designed so as to create a hazard for those attempting to use it." *Id.* I would adopt that definition in this case.

There is reason to believe that the legislature deliberately selected the words "defective and unsafe" in Minn.Stat. § 541.-051. The statute was adopted in 1965, presumedly in response to "pressures brought to bear upon state legislatures by the architectural profession and construction industry after a major extension of their potential liability [with the erosion of the privity-of-contract doctrine]." *Kittson,* 241 N.W.2d at 802 (quoting Comment, *Limitation of Action Statutes for Architects and Builders—Blueprint for Non-action,* 18 Catholic U.L.Rev. 361 (1969)). At least 30 jurisdictions have adopted comparable statutes, and many are strikingly similar to Minnesota's—with one notable exception. Half of the jurisdictions with statutes similar to Minn.Stat. § 541.051 have substituted the word "or" for "and." [1] The impact of that word change is significant, extending application of the two-year limitations period to those cases where the challenged improvement is defective but not unsafe.

Some legislatures have chosen to use "defective or unsafe" language. Ours has not. Thus I believe our legislature's word choice was intentional. I would hold that under Minn.Stat. § 541.051, a complained

---

1. Examples of statutes applying the "defective or unsafe" language are D.C.Code Ann. § 12–310 (1989); Mo.Rev.Stat. § 516.097(1) (1986); N.M.Stat.Ann. § 37–1–27 (1978 Michie & Supp. 1990); N.C. Gen.Stat. § 1–50(5)(a)(1991); S.C.Code Ann. § 15–3–640 (Law.Co-op.Supp. 1991); Tex.Civil Prac. & Rem.Code Ann. § 16.-008(a) (West 1986); Utah Code Ann. § 78–12–25.5(8) (1992); and W.Va.Code Ann. § 55–2–6a (1992). Examples of statutes employing "defective and unsafe" language are Md.Cts. & Jud. Proc.Code Ann. § 5–108(a) (1989 & Supp.1991); Mich.Comp.Laws Ann. § 600.5839 (West 1987); N.J.Stat.Ann. § 2A:14–1.1 (West 1987); Ohio Rev.Code Ann. § 2305.131 (Anderson 1991); and Wis.Stat.Ann. § 893.89 (West 1983 & Supp. 1991) (declared unconstitutional on equal protection grounds by *Funk v. Wollin Silo & Equip., Inc.,* 148 Wis.2d 59, 76–77, 435 N.W.2d 244, 252 (1989)).

of improvement must be both defective and hazardous before the two-year limitations period applies. Because the parties have stipulated that there is no health hazard, under this definition, the disputed improvements cannot be considered unsafe. As a result, I would hold the two-year limitations period does not apply. .

YETKA, J., joined in the dissent of Justice TOMLJANOVICH.