**HYLAND HILL NORTH CONDOMINIUM ASSOCIATION, INC., Appellant (C7–94–2564), Respondent (C8–94–2573),**

and

**St. Paul Fire and Marine Insurance Company, Intervenor,**

v.

**HYLAND HILL CO., et al., Respondents (C7–94–2564), Appellants (C8–94–2573),**

**The James Michael Seed Trust, et al., Defendants (C8–94–2573),**

and

**Berwald Roofing, Co., Inc., Respondent (C8–94–2573).**

Nos. C7–94–2564, C8–94–2573.

Court of Appeals of Minnesota.

Oct. 3, 1995.

Review Granted Nov. 30, 1995.

---

John R. Dorgan, Fredrick R. Krietzman, Frommelt & Eide, Ltd., Minneapolis, for Hyland Hill North Condominium Association, Inc. and Berwald Roofing Co., Inc.

Einar E. Hanson, Strobel & Hanson, Red Wing, John D. Hagen, Jr., Minneapolis, for Hyland Hill Co.

Considered and decided by RANDALL, P.J., and NORTON and DAVIES, JJ.

## OPINION

DAVIES, Judge.

A condominium association sued a condominium developer/declarant (and several associated defendants) for damages based on breach of warranties, breach of fiduciary duties, breach of contract, and negligence, claiming, among other things, construction and design defects. After a jury verdict for the association, the trial court held that a two-year statute of limitations barred the claims against all defendants for defective construction and design. We reverse as to construction and design defects, but affirm the judgment in other respects.

## FACTS

Appellant Hyland Hill North Condominium Association, Inc. (Association), is the governing body of Hyland Hill North Condominium. The developer and "declarant" of the condominium is respondent Hyland Hill Co.[1] Hyland Hill Co. consists of two partners, Melvin

1. The parties have taken cross-appeals. For convenience, we refer to the Association as appellant and all other parties as respondents.

C. Gittleman and Donald W. Anderson. Gittleman and Anderson are also officers and directors of respondent Gittleman Management Corporation, the managing agent for the condominium from October 1985 through August 1990.

Prior to mid–1989, sporadic water leaks occurred in various areas of the condominium's roof. Initially, the Association addressed this problem by relying on Gittleman Management Corporation to arrange for roof repairs. But in late 1989, after continual repair efforts proved futile, the Association hired a roof specialist (INSPEC) to investigate. INSPEC first informed the Association that the roof was in need of a $20,000 repair project. Then, in the spring of 1990, after more extensive water leakage, an infrared moisture scan of the roof by INSPEC revealed that it was in much worse condition than previously thought. INSPEC changed its recommendation from mere repair to total roof replacement. The Association replaced the roof in the fall of 1990 at a cost of approximately $350,000, which included the costs incurred investigating the problem. In November 1990, the Association brought this suit against declarant Hyland Hill Co., the Gittleman Management Corporation, Berwald Roofing Co., and others.

At trial of the warranty and other claims, the jury awarded the Association $350,172 for damages resulting from defective construction and design of the roof, $138,287 for defects in masonry facade, patios, and sun decks, $4,802 in maintenance assessments, and $15,000 for reserve account contributions. The trial court, however, ruled that the two-year statute of limitations in Minn. Stat. § 541.051, subd. 1(a), as a matter of law barred all claims of roof and non-roof defects. The trial court rejected the Association's assertion that the applicable statute of limitations was the six-year statute contained in the Uniform Condominium Act, Minn.Stat. § 515A.4–114(a).

The court, granting JNOV, ruled that the two-year statute also barred a cross-claim asserted by Hyland Hill Co. against respondent Berwald Roofing Co., which had built the roof initially. These cross-appeals followed.

## ISSUES

I. Which statute of limitations, Minn.Stat. § 541.051, subd. 1(a), or Minn.Stat. § 515A.4–114(a), applies to the Association's claims for breach of warranties under the Uniform Condominium Act?

II. When did the applicable statute of limitations commence to run?

    a. What does the six-year statute provide?

    b. For the two-year statute, when was the injury discovered?

III. Was the leaking roof an "unsafe" condition?

IV. Did the trial court err in failing to distinguish between the Association's roof and non-roof injuries?

V. Other issues.

    a. How shall the special verdict be interpreted?

    b. Were expense assessments recoverable?

    c. Were replacement reserve contributions recoverable?

    d. May appellant raise new issues?

## ANALYSIS

### I.

### Applicable Statute of Limitations

In 1980, the Minnesota legislature enacted the Uniform Condominium Act, Minn. Stat. ch. 515A. It applies to all condominiums created after August 1, 1980. Minn. Stat. § 515A.1–102(b). Sections 515A.4–111 and 515A.4–112 of the Act provide for warranties to purchasers by declarants, including an implied warranty that "a unit and the common elements in the condominium are structurally suitable for the ordinary uses of real estate of its type." Minn.Stat. § 515A.4–112(b). The statute of limitations for actions based on this warranty provides:

A judicial proceeding for breach of any obligation arising under section 515A.4–111 or 515A.4–112 must be commenced within six years after the cause of action accrues * * *.

Minn.Stat. § 515A.4–114(a). Notwithstanding this six-year limitations period and the jury's verdict that Hyland Hill Co. had breached both express and implied warranties under the Act, the trial court granted Berwald Roofing Co.'s motion for JNOV, and concluded that the two-year limitations period under Minn.Stat. § 541.051 also barred the Association's defective design and construction claims.

It is well established that between two statutes, the more specific one prevails. Minn.Stat. § 645.26, subd. 1. The two-year statute addresses damages based on services or construction to improve real property generally. Minn.Stat. § 541.051. The Uniform Condominium Act's six-year limitations period applies explicitly to claims under sections 515A.4–111 and 515A.4–112, the provisions under which the Association brought its claims. Therefore, the six-year statute is more specific to the claims made here and, under Minn.Stat. § 645.26, subd. 1, it applies.

To support application of the two-year statute, Hyland Hill Co. cites *Greenbrier Village Condominium Two Ass'n v. Keller Inv.*, 409 N.W.2d 519 (Minn.App.1987). Minnesota's original Condominium Act, Minn.Stat. ch. 515, which was applicable in *Greenbrier*, does not contain its own statute of limitations. Since the six-year statute of limitations applies only to condominiums created after August 1, 1980, it was not available to trump the two-year statute applied in *Greenbrier*. Minn.Stat. § 515A.1–102(b). Thus, *Greenbrier* is not relevant on this point and the Uniform Condominium Act's six-year statute of limitations governs the Association's claims for breach of warranties under the Act. (As discussed later, we do find *Greenbrier* relevant in other respects.)

## II.

### Dates the Alternative Statutes of Limitations Began to Run

**A.  The six-year statute could commence running only after the declaration was recorded.**

■ Hyland Hill Co. argues that the Association's claims are barred even if the Uniform Condominium Act's six-year statute of

limitations is applied. Under that statute, breach of warranty actions must be brought within the latter of six years of completion of the common elements or conveyance of the first unit. Minn.Stat. § 515A.4–114(b)(2); *Chapman Place Ass'n, Inc. v. Prokasky*, 507 N.W.2d 858, 862 (Minn.App.1993). Hyland Hill Co. contends that the common elements of the condominium were completed and the first units conveyed by September of 1984, more than six years before this action was commenced.

A condominium is not legally created, however, until its declaration is recorded. Minn. Stat. § 515A.2–101(a). Only then does the development become a condominium and only then are the protections of the Uniform Condominium Act triggered. Thus, until a declaration has been recorded, "common areas" cannot be completed nor can a condominium unit be conveyed. Neither triggering event for the running of the Act's statute of limitations can occur before recording of the declaration. To hold otherwise could allow the statute of limitations to run before it is even applicable. Minn.Stat. § 515A.4–102(d) gives direct support to this proposition by requiring that the disclosure statement mandatorily given to unit buyers contain "a copy of the declaration." It follows that a unit cannot be conveyed for purposes of the Uniform Condominium Act until the recorded declaration is available.

Here, the condominium's declaration was not recorded until January 25, 1985. The Association commenced its action in November 1990. Thus, the Association's claims under the Uniform Condominium Act were timely under the Act's six-year statute of limitations.

**B.  Alternatively, if the two-year statute applies, it commenced to run as to roof claims only when the need for roof replacement became known.**

■ The Association argues that, even if the two-year statute of limitations is applicable, it does not bar the action for roof defects because the injury was first discovered within the two years prior to commencement of the action. Although we could rest our deci-

sion as to the Association's claims on the conclusion that the six-year statute applies, we choose to address as well this alternative argument that the roof claim survives even under the two-year statute.

■ With respect to the two-year statute, this court has held:

> [T]he limitation period in section 541.051, subd. 1, begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, an injury sufficient to entitle him to maintain a cause of action.

*Greenbrier,* 409 N.W.2d at 524. But discovery of the first signs of an injury does not necessarily mean that the limitations period has begun to run as to every possible claim.

For example, in *Lake City Apartments v. Lund–Martin Co.,* 428 N.W.2d 110 (Minn. App.1988), *review denied* (Minn. Oct. 19, 1988), the plaintiffs did not discover the true nature of their injury (defective plumbing throughout the building) until more than two years after they discovered the initial leaks. This court concluded that discovery of a few water pipe leaks did not necessarily constitute discovery of the more extensive injury for which the action was brought. *Id.* at 112.

This case is similar to *Lake City Apartments.* The Association does not contest that it was aware of at least some injury—"sporadic" roof leaks throughout the building—by October 1987. But it argues that not until mid–1989 did it think it necessary or reasonable to take the more costly step of hiring INSPEC, an outside roof specialist, to investigate the problem. And only later still, in May 1990, did the Association learn from INSPEC that, despite the continual repairs made through respondent Gittleman Management Corporation, replacement of the roof was inevitably necessary. The Association, thus, did not discover the true nature of its injury until May 1990, when INSPEC had completed the infrared scan of the roof and made its report.

It would be unsound public policy to impose a stricter rule, requiring a party to investigate all possibilities at the first sign of a problem. The approach of *Lake City Apartments* is especially compelling here, where, before commencing its lawsuit, the Association took reasonable steps to remedy the problem in an economically sound and thrifty fashion, making reasonable assumptions of fact rather than spending large sums to guard against possibilities perceived as remote.

■ This rationale parallels the contract doctrine of mutual mistake, which allows a party to avoid contract liabilities where, at the time of contracting, both parties were mistaken as to a material fact. *Winter v. Skoglund,* 404 N.W.2d 786, 793 (Minn.1987). The mistake doctrine promotes economic efficiency by allowing parties to enter freely into contracts without first going to the prohibitive expense of carefully investigating every fact assumption upon which the agreement is based. Similarly, in this case discovery of a cause of action for *repair* based upon sporadic leaks should not preclude, as a matter of law, a later assertion of a cause of action for *replacement* of an entire roof system necessary because of previously undiscovered design and construction defects.

■ *Lake City Apartments* also held that "[w]hen reasonable minds may differ about the discovery of the injury or condition, the issue is one for the trier of fact." 428 N.W.2d at 112. We conclude, therefore, that the trial court also erred by taking this issue away from the jury and holding that the Association discovered its injury when it first discovered leaks in the party room and garage sometime prior to October 1987.

■ The trial court thus also erred in using the October 1987 discovery date as a bar to Hyland Hill Co.'s cross-claim against Berwald Roofing Co., Inc., based on breach of its construction contract. Using the proper discovery date, as found by the jury, the cross-claim was timely.[2] The jury verdict is

---

2. The jury also found that Hyland Hill Co. did not toll the two-year statute of limitations. The Association claims this finding is a result of an erroneous instruction. After reviewing the pertinent instruction, we are unpersuaded by the Association's argument that the jury could have wrongfully concluded that it had to find fraudulent concealment in order to find tolling. "It is unnecessary that every possible opportunity for misapprehension [by the jury] be guarded against." *Seivert v. Bass,* 288 Minn. 457, 467, 181 N.W.2d 888, 894 (1970). There is sufficient evidence in the record to support the jury's finding that the limitations period was not tolled.

reinstated.[3]

## III.

### Leaking Roof is Unsafe Condition

█ The Association also argues (again in the alternative) that the two-year statute of limitations in Minn.Stat. § 541.051, subd. 1(a), does not apply here because the injury does not arise out of a condition that is both "defective and unsafe," as required by the statute.

█ We agree with the Association that whether a condition is unsafe is a question that turns on the facts of each case. *Griebel v. Andersen Corp.*, 489 N.W.2d 521, 523 (Minn.1992). But in *Griebel*, the Minnesota Supreme Court, holding that " 'unsafe' also means 'insecure,' " concluded:

A window or door which fails to provide the expected barrier against unwanted elements such as *rain* or snow or living creatures such as flies or mosquitoes is insecure or unsafe *whether or not the invader is hazardous to life and limb.*

*Id.* (emphasis added). We see no reason to treat the leaking roof in this case any different from the windows and doors involved in *Griebel.* We hold that the roof was "unsafe" within the meaning of Minn.Stat. § 541.051, subd. 1(a).

## IV.

### Roof and Non-roof Injuries Are Distinguishable

█ Respondents insist that the Association's non-roof claims (relating to defects in masonry facade, three-season patios, and sun decks) are not sufficiently separate and distinct to constitute an independent cause of action. They argue that, because the Associ-

ation linked all of its claims to "water leakage," it cannot now claim to have separate injuries for statute of limitations purposes. Respondents appear to suggest that all "water leakage" constitutes the same injury. But, were we to adopt that proposition, it would lead to both absurd and unjust consequences. One can suffer multiple injuries that are unquestionably separate and distinct despite some similarity in their nature.

Respondents again cite *Greenbrier*, where the plaintiff condominium association argued that knowledge of specific "precast concrete cracks" in particular parts of the building did not trigger the statute of limitations as to other concrete cracks through the rest of the building. 409 N.W.2d at 523. The *Greenbrier* court disagreed:

Greenbrier urges that these defects differ from those discovered before September 1981 not only in degree, but in kind. * * * We do not find any of the specified defects (or those subsequently cited) sufficiently separate and distinct * * * to create a cause of action in addition to that which arose prior to [their initial cause of action].

*Id.* We read this to mean that, although the Association here may not claim that each individual leak caused by the defective roof is a separate cause of action, the Association may still have various claims of non-roof water leaks that are sufficiently distinct to constitute causes of action separate from roof claims. We conclude that injuries relating to the masonry facade, the patios, and the sun decks are separate and distinct from the roof. The trial court abused its discretion in failing to make this distinction for the purpose of establishing a discovery date.

---

**3.** In its appeal, Hyland Hill Co. maintains that if the statute of limitations issue is decided adversely to it, it is then entitled to a new trial on damages because the trial court failed to instruct the jury on the doctrine of avoidable consequences. The trial court did instruct the jury as follows:

The plaintiff's damages for harm to its property should not include any loss which plaintiff

could have prevented by reasonable care and diligence.

Hyland Hill Co. argues that the Association could have avoided its damages by accepting Berwald Roofing Co., Inc.'s, offer to repair the roof. But the jury found that the roof was beyond repair. Thus, Hyland Hill Co. could not, in any event, have been prejudiced by the trial court's failure to give the exact instruction requested.

Nonetheless, since the warranty claims on non-roof defects were brought within the six-year limitations period of the Uniform Condominium Act, they were timely. And, as noted in the next section, they cover the full amount of the damages awarded. (But the Association's non-roof claims might have been barred if decided on theories alternative to warranty.)

## V.

### Other Issues

#### A. Special Verdict

■ The trial court provided the jury with a special verdict form that contained several alternative theories under which damages could be awarded. Respondents argue that, in answers to the special verdict form, the damages the jury assigned to negligence on the one hand, and to breach of warranties on the other hand, are duplicative damages for the same injuries. We disagree, for we have no doubt but that the special verdict form simply left the jury feeling compelled to split up the total damages amongst the three different theories of liability offered.

■ It is unnecessary for us to speculate as to why the jury allocated damages in the manner it chose because there is no evidence in the record to suggest that liability under the warranty theory should be less in any respect from liability under all theories combined. We hold, therefore, that the damages awarded for a particular building defect are recoverable in their entirety under breach of warranty. This places the full liability for all building defects, as found by the jury, outside the bar of the two-year statute of limitations.

#### B. Expense Assessments

■ The Association claims the trial court improperly denied its motion for JNOV regarding the claim for "common expense assessments" owed by Hyland Hill Co. for the period before the condominium was turned over to the Association. As the trial court stated, there is evidence in the record from which the jury could have found, as it

did, that defendants were liable for only $4,802 in assessments.

Unless we are able to determine that the evidence is practically conclusive against the verdict, or that reasonable minds could reach but one conclusion against the verdict, the trial court's order denying the motion for judgment notwithstanding the verdict should stand.

*Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

The trial court's denial of the Association's JNOV motion was therefore proper, and the award for assessments is affirmed.

#### C. Replacement Account Obligation

■ The Association claims that it is entitled to a new trial because it was prejudiced by the trial court's admission into evidence testimony of "common practice" regarding condominium declarants' contribution to replacement reserve accounts. But this testimony was relevant to the jury's determination of whether or not Hyland Hill Co., as the declarant, had any duty to fund such an account. The jury found that such a duty was owed. Thus, even though it may be dissatisfied with the amount awarded, the Association was not prejudiced by this testimony and the trial court's denial of the Association's motion for a new trial on this claim was proper. Errors of law and irregularity in the proceedings must be prejudicial in order to grant a new trial. *Danielson v. Hanford*, 352 N.W.2d 758, 762 (Minn.App. 1984).

There was sufficient testimony supporting the jury finding that $15,000 was the amount owed by Hyland Hill Co. to the replacement reserve account and that award is affirmed.

#### D. New Arguments by Appellants

The Association maintains that because respondent Gittleman Management Corporation did not take part in "performing or furnishing the design, planning, supervision, materials, or observation of construction of the improvement to real property," the statute of limitations in Minn.Stat. § 541.051 does not apply to the management corporation. Because the Association did not raise

this argument at trial, we decline to address it on appeal. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

The Association also contends that there exists an issue of material fact as to when the Association discovered a breach of warranty provided for in Minn.Stat. § 327A.02, subd. 1(c), and thus when the two-year statute of limitations began to run as to their claim for a "major construction defect." But no such injury was alleged at trial, and the Association does not specify the basis for this claim. We therefore decline to consider this argument. *Id.*

### DECISION

The trial court's decision based on the statute of limitations is reversed in accordance with this opinion. The full amount of damages awarded for roof and non-roof defects is ordered reinstated. The jury's award on Hyland Hill Co.'s cross-claim against Berwald Roofing Co., Inc., is also reinstated in accordance with this opinion. The awards for common expense assessments and reserve account contributions are affirmed.

**Affirmed in part and reversed in part.**